IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-51159

BRIAN MCARDLE

Plaintiff-Appellant

v.

DELL PRODUCTS, L.P.; DELL MARKETING USA, L.P.

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-00841

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Brian McArdle ("McArdle") appeals from the district court's grant of summary judgment to Dell Products, L.P. ("Dell"). McArdle alleges Dell violated the entitlement and anti-retaliation provisions of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., when, following the end of his approved leave, Dell failed to return an important sales account to his portfolio and terminated his employment. For the reasons set forth below, we conclude the district court erred by granting Dell's motion for summary judgment on the

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entitlement claim and the retaliation claim relating to the sales account, but conclude the district court did not err by granting summary judgment on the retaliatory termination claim. Accordingly, we affirm in part, reverse in part, and remand to the district court for further proceedings.

## I. BACKGROUND

McArdle began working for Dell in October 1996 as a sales associate. Shortly thereafter, Dell transferred McArdle to the Preferred Accounts Division, where he attained the position of Sales Representative IV by August 2004. His duties primarily involved handling sales for specific customer accounts, collectively referred to as his "account set." In 2002, the internet sites AskJeeves and eBay were added to McArdle's account set. Both AskJeeves and eBay were large, high-activity accounts and became the largest accounts in McArdle's portfolio.

In 2004, McArdle suffered from problems with his back and, in August 2004, he applied to Dell for FMLA leave in order to have surgery. Dell approved the leave, which was set to run from August 24th to October 18th. When McArdle began his leave, Dell re-assigned all of McArdle's accounts to other sales representatives for them to handle during McArdle's absence. McArdle returned to work as scheduled on October 18th as a Sales Representative IV and received all of his accounts except eBay. The eBay account had been permanently reassigned to Frank Perry, another sales representative. McArdle asked his direct supervisor, Brad Lambert, to return the account, but the account was not returned.

Frustrated with the loss of the eBay account, McArdle voluntarily transferred to the Corporate Business Group ("CBG") in December 2004. McArdle was given different accounts, which included the account of investment bank Bear Stearns. According to McArdle, "[i]t was common knowledge at Dell that the Bear Stearns account was extremely difficult to work with." In

September 2005, as a result of McArdle's poor performance and Dell's receipt of customer complaints about him, his supervisor in the CBG, Nichole Gallagher, placed him on a Performance Improvement Plan ("PIP"). The PIP included a goal of not receiving any more customer complaints. However, while McArdle was on the PIP, another customer made a complaint against him. Dell then terminated McArdle's employment on November 4, 2005.

McArdle filed suit in the district court, alleging Dell violated the FMLA by failing to provide him with an equivalent position upon his return from leave and engaged in retaliation on account of his taking leave. Dell moved for summary judgment on all of McArdle's claims, which the district court granted. McArdle filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must therefore "refrain from making credibility determinations or weighing the evidence." Turner, 476 F.3d at 343.

## III. ANALYSIS

The FMLA entitles eligible employees to twelve work-weeks of leave in any 12-month period for various qualifying events, including a "health condition that makes the employee unable to perform the functions" of his position. 29 U.S.C.

§ 2612(a)(1)(D). An employer ordinarily must provide returning employees with the same position they previously held or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1). Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004). The FMLA also "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights." Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998). An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2). Haley, 391 F.3d at 649. McArdle asserted entitlement and retaliation claims against Dell. We discuss each of his claims in turn.

## A. McCardle's Entitlement Claim

The district court concluded McArdle received an equivalent position upon returning from leave and that the loss of the eBay account was de minimis as a matter of law. McArdle argues the district court erred by failing to consider evidence showing he lost approximately $12,000 to $20,000 in annual compensation because he no longer held the eBay account. Dell contends the district court properly disregarded that evidence and, in any event, correctly concluded that any pre- and post-leave differences in McArdle's position were de minimis as a matter of law.

An equivalent position is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites, and status." 29 C.F.R. § 825.215(a). Upon return from leave, "[t]he employee must have the same or an equivalent opportunity for bonuses profit-sharing, and other similar discretionary and non-discretionary payments." Id. § 825.215(e)(3); see Smith v. E. Baton Rouge Parish Sch. Bd., 453 F.3d 650, 651 (5th Cir. 2006) (noting an equivalent position "must . . . have similar

4

opportunities for promotion and salary increase." (emphasis added)). "De minimis, intangible changes in the employee's position do not, however, violate the FMLA." Id. (citing 29 C.F.R. § 825.215(f); Mitchell v. Dutchmen Mfg., 389 F.3d 746 (7th Cir. 2004)).

Viewed in the light most favorable to McArdle, his affidavit and deposition testimony show that he received less compensation or had diminished potential for compensation when he returned from FMLA leave. In his deposition testimony, McArdle testified that he suffered monetary loss as a result of losing the eBay account. In his affidavit, McArdle stated the loss of the eBay account lowered his revenue by one-third and "cost [him] bonus money and the opportunity to make further bonus money." McArdle averred the eBay account historically provided $12,000 to $20,000 in bonuses each year. "Those bonuses are based on sales of equipment made on that account, so losing eBay from my account [set], and not receiving a replacement account, meant a certain drop in my bonus compensation." Based on that evidence, a reasonable trier-of-fact could conclude McArdle received $20,000 less per year in compensation as a result of the change or that he no longer had the opportunity to earn that compensation.

In response, Dell first asserts the district court properly ignored McArdle's affidavit because it contradicted his prior deposition testimony. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). However, if the affidavit "merely supplements rather than contradicts prior deposition testimony," it may be considered when resolving the motion for summary judgment. Id. at 496. Permissible supplementation includes providing "greater detail or additional facts not previously provided in the deposition." Id.

McArdle's affidavit did not contradict his prior deposition testimony. Instead, the affidavit served only to supplement or explain the earlier testimony. McArdle testified at his deposition that the only post-leave change in his position was the loss of the eBay account, and that the loss of the account affected him "monetarily." The affidavit and deposition testimony are entirely consistent in that respect. Dell additionally argues the affidavit contradicts McArdle's deposition testimony because it includes details that he did not provide in the testimony. However, none of the questions asked of McArdle required him to provide the specific amount of his lost bonuses. Thus, he "had no occasion" to reveal the details contained in the affidavit during his earlier deposition. See Clark v. Resistoflex, Inc., 854 F.2d 762, 766-67 (5th Cir. 1988). Moreover, as noted above, a party may supplement his deposition testimony with additional, consistent facts and details via affidavit. See S.W.S. Erectors, 72 F.3d at 495.

Next, Dell argues the district court properly discounted McCardle's affidavit because it contained conclusory, unsupported allegations. We disagree. "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997). Dell particularly challenges the statements in McArdle's affidavit that eBay "historically meant an additional $3,000-$5,000 in bonus pay" and that the loss of eBay meant McArdle would suffer a "certain drop" in compensation. However, Dell's argument focuses too narrowly on the affidavit's allegations. The ultimate fact McArdle is trying to prove is that he lost compensation without the eBay account. He provided a specific monetary figure to support that allegation and noted the source of bonus was "sales of equipment made on that account." McArdle undoubtedly had personal knowledge of his income and its origin. If he received a certain amount of compensation from eBay in the past, the trier of fact could reasonably infer that

losing the eBay account would prevent him from earning that compensation in the future.

Dell finally asserts that, even considering the affidavit and other evidence, the district court properly determined any changes in McArdle's position were de minimis as a matter of law. According to Dell, it established compensation guarantees for the quarter following McArdle's return that were equivalent to his pre-leave compensation. Despite that evidence, summary judgment was not appropriate in light of McArdle's affidavit and deposition testimony, which definitively stated that the loss of the eBay account reduced his compensation. That competing evidence establishes an issue of fact for a jury to resolve. Moreover, the parties agree that Dell's guarantee was only temporary. A jury could find the temporary guarantee was not equivalent to the indefinite eBay account income and income opportunities.[1]

B.     McArdle's Retaliation Claims

McArdle alleges Dell removed the eBay account and terminated his employment as retaliation for exercising his rights under FMLA. Retaliation claims under the FMLA are analyzed using the McDonnell Douglas burden-shifting framework. See Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001). To make a prima facie case of retaliation under the FMLA, the plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not required leave under the FMLA; or (3a) the adverse decision was made because he took FMLA leave." Id. (citation omitted). Once the plaintiff makes a prima facie showing, the burden

---

[1] McArdle also argues that his loss of the eBay account was not de minimis because his supervisors and co-workers viewed him less favorably after he lost the eBay account. Because McArdle offered enough evidence regarding the lack of equivalency in pay, we do not address his argument that a lessened reputation is a loss of "status" for purposes of 29 C.F.R. § 825.215(a).

shifts to the defendant "to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." Id. If the defendant makes such a showing, the plaintiff "must show by a preponderance of the evidence that [the defendant's] reason was a pretext for retaliation." Id.

1. Retaliation Regarding the eBay Account[2]

McArdle alleges Dell undertook an adverse employment action by not returning the eBay account to his portfolio when he returned from leave. Dell asserts that decision was not an "adverse employment action" for purposes of the FMLA. Dell primarily relies on cases decided before the Supreme Court's decision in Burlington Northern & Northern Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). Burlington Northern involved an employee's retaliation claims under Title VII of the Civil Rights Act of 1964. Id. at 59. The Supreme Court held that an employee suffers an "adverse employment action" for purposes of Title VII if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotations omitted). In so holding, the Court rejected the standards previously employed by several circuits, including this one. See id. at 60-61, 68.

While other employment statutes are instructive for the standard under the FMLA, they are not dispositive. See Faris v. Willaims WPC-I, Inc., 332 F.3d 316, 321 (5th Cir. 2003). When referencing other statutes, "[w]e must carefully

---

[2] Dell argues on appeal, for the first time since offering it as defense in the answer, that McArdle's retaliation claim as to the eBay account is barred by the applicable statute of limitations. To preserve an issue for appeal, "the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court had an opportunity to rule on it, we will not address it on appeal." FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1997). Dell did not press its statute of limitations argument before the district court to such a degree that it was preserved for appeal.

consider whether there are aspects of [the statutes] that might encourage differing protections and interpretations." Id. Prior to Burlington Northern, this court applied the same "adverse employment action" analysis to FMLA and Title VII claims. Compare Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999) (applying the "ultimate employment decision" standard to a Title VII retaliation claim), with Hunt, 277 F.3d at 769-70 (applying the "ultimate employment decision" standard to an FMLA retaliation claim). Our consideration of the statutes before Burlington Northern revealed no reasons to apply different interpretations.[3] Moreover, the Seventh Circuit, the only other circuit to address this issue, has applied Burlington Northern in the FMLA context. See Breneisen v. Motorola, Inc., 512 F.3d 972, 979 (7th Cir. 2008). Accordingly, we conclude Burlington Northern applies to retaliation claims under the FMLA.

McArdle offered sufficient evidence to show he suffered an adverse employment action. Whether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide. See Burlington Northern, 548 U.S. at 71-73; see also Crawford v. Carroll, 529 F.3d 961, 973 n.13 (11th Cir. 2008) ("Burlington also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions.").[4] In this case, a jury could certainly conclude the potential loss of $20,000 in annual compensation was materially adverse.

---

[3] In Hunt, the court left open the possibility that "the FMLA may cover a broader range of employment actions than the anti-retaliation provision in Title VII" in light of the applicable Department of Labor regulations. See Hunt, 277 F.3d at 669-70. While the standards might not be identical, we have never interpreted the FMLA as covering a narrower range of employment actions than Title VII.

[4] Because this case involves a substantial loss of compensation, we need not address whether and what types of "petty and trivial actions" can be deemed non-adverse as a matter of law.

Finally, McArdle met his burden of showing Dell did not return the account because he took FMLA leave. The district court granted summary judgment to Dell because "[t]here is no evidence that Dell treated McArdle less favorable than other similarly situated employees." However, McArdle can make a prima facie showing either through indirect proof of disparate treatment or through direct proof of animus. See Hunt, 277 F.3d at 768. McArdle concedes that he did not offer comparative evidence. Instead, he argues he offered direct proof of retaliatory animus and that the district court erroneously overlooked that evidence.

McArdle primarily points to two pieces of evidence to establish causation. The first piece of evidence is an e-mail sent by his immediate supervisor, Brad Lambert, to human resources representative John Adcock on August 24, 2004. August 24, 2004 is also the day McArdle filed for leave, the day Dell granted the request, and the day his leave period began. In the e-mail, Lambert expressed concern about "Brian McArdle's time away," particularly that McArdle's "extra curricular" activities, such as golfing and a trip to Las Vegas, exacerbated his back condition and necessitated additional time off. He asked for Adcock's directions and whether "[a]t some point, do we have the right to say his extra curricular activities are a concern if they interfere with his job performance?" The second piece of evidence is Adcock's deposition testimony, stating he thought Lambert, in his e-mail, "was questioning whether [McArdle's missed time] was or wasn't [legitimate]. He was unsure." Adcock also testified that Lambert "was frustrated that he had a rep that was missing time and wanted to figure out how he could help him one way or the other."

Analogous cases have held that such evidence is sufficient to establish retaliatory causation. In Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998), the First Circuit held a supervisor's warnings that an employee "was taking 'too much time off'" and expressions of concern regarding the employee's

absenteeism were sufficient to show causation in an FMLA retaliation case. Id. at 165. Similarly, in this case, there is evidence that McArdle's supervisor was "frustrated" with his absences and expressed concern about his attendance. McArdle's supervisor even did so in an e-mail that specifically referenced his eventual request for FMLA leave. Further, Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004), involved an employee who alleged she experienced age discrimination in violation of the Age Discrimination in Employment Act. The court held that evidence that her supervisor "repeatedly made ageist comments to and about" the plaintiff "easily established" a prima facie case of discrimination. Id. at 313. Although we recognize there is no evidence of repeated comments regarding McArdle's absences, the evidence of Lambert's negative feelings towards the absences creates an inference of causation.

There is additional evidence that could support a jury's finding in McArdle's favor. It is undisputed that Dell decided not to return the account either when McArdle was on leave or shortly after he returned. Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999) ("[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment."). Moreover, there is evidence that Dell returned accounts to another employee upon his return from an extended absence -- showing that Dell may have deviated from its usual custom in McArdle's case. We thus conclude plaintiff met his burden at summary judgment of demonstrating a prima facie case of retaliation with respect to the eBay account.

The district court concluded Dell offered the following legitimate, non-retaliatory reasons for not returning the eBay account to McArdle:

> (1) eBay was a high activity account that required support during McArdle's absence; (2) moving the account and its quota from McArdle to Perry brought McArdle's quota in line with Perry's quota; and (3) Lambert had received complaints from eBay

regarding McArdle. . . . The evidence also shows eBay was happy with Perry and moving the account back to McArdle would have bothered eBay.

The district court, applying the "pretext-plus" standard, then held that "despite Plaintiff's various attempts to raise a fact issue" regarding the falsity of the proferred reasons, McArdle failed to prove that retaliation was the real reason for not returning the eBay account.

We first note the district court erred in applying the pretext-plus standard in light of the Supreme Court's decision in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). The pretext-plus standard generally required plaintiffs to introduce evidence that the employer's asserted non-retaliatory justification was false and that the employer's real reason for taking the adverse action was retaliatory. See Chaffin v. John H. Carter Co., 179 F.3d 316, 320 (5th Cir. 1999). Reeves rejected that standard. See Reeves, 530 U.S. at 146-49. After Reeves, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [engaged in retaliation]." Id. at 149. Upon such a showing, summary judgment for the employer is appropriate only if there are "unusual circumstances" that would preclude the trier of fact from finding for the plaintiff. See id.; Blow v. City of San Antonio, 236 F.3d 293, 298 & n. 3 (5th Cir. 2001).

McArdle offered evidence that establishes a genuine issue of the reasons' falsity. First, the fact that eBay was a high activity account that demanded attention during McArdle's leave explains only why it needed to be transferred in his absence; that reason provides no explanation for why Dell did not transfer the account back to McArdle when he returned. Second, although Dell claims it received complaints about McArdle from eBay, when asked via interrogatory who complained about McArdle's performance, Dell's response did not include

eBay—even though other customers, such as Bear Stearns, were listed. A jury, viewing the inconsistency between Dell's interrogatory response and its current argument, could doubt the veracity of its reason. Finally, a jury could choose to disbelieve the remaining reasons in light of evidence that, approximately four months after McArdle returned from leave, Dell again transferred the eBay account, this time from Perry to another sales representative. Additional movement of the eBay account casts doubt on Dell's explanations that Perry needed the eBay account for quota equality, that Dell wanted to avoid undue turnover among account representatives, and that "moving the account [from Perry] would have bothered eBay."

2.    Retaliatory Termination

McArdle next alleges Dell terminated his employment in retaliation for taking FMLA leave. Even assuming McArdle met his burden of demonstrating a prima facie case of retaliation regarding his termination, we find no error in the district court's grant of summary judgment to Dell on his retaliatory termination claim. Dell presented evidence that McArdle was fired for poor performance. Shortly after his transfer to CBG, his supervisor, Nichole Gallagher, placed him on a PIP because of performance issues he was experiencing. Gallagher explained that she terminated McArdle's employment because "[t]here was ongoing poor performance in terms of customer experience, following-through on the basics of the job in order to be successful and . . . attendance issues." She testified that customers complained about his performance, he failed to file timely reports, his phone talk-time was low, and his attitude towards customers and management was poor.

McArdle acknowledged in his deposition that he actually had those performance-related issues. Because McArdle does not argue this case should

be analyzed under a mixed-motive framework,[5] he must "produce evidence rebutting all of [the] defendant's proferred nondiscriminatory reasons." Machinchick v. RB Power, Inc., 398 F.3d 345, 351 (5th Cir. 2005). He conceded that he had a poor attitude, was the subject of customers' complaints, and did not do his work in a timely manner. For example, McArdle testified that towards the end of his time at Dell, his "attitude went to shit with Nichole and the [CBG] team" and that "I sucked there for a while at the end." He also acknowledged that a customer complained about him, even though his PIP listed "[n]o future issues from . . . customers" as a goal. Finally, McArdle testified that, although he "felt . . . defeated before [he] started" at CBG, he agreed that he "did have a lot of other issues that went along with it, and, you know, Nichole documented them all, and those are accurate." In light of that evidence, McArdle failed to show that all of Dell's proferred legitimate, non-retaliatory reasons were pretextual. Accordingly, the district court properly granted summary judgment to Dell on the retaliatory termination claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the district court and remand this matter for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[5] We have recognized the mixed-motive framework's applicability in FMLA cases. See Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 334-35 (5th Cir. 2005). However, McArdle did not argue before the district court nor does he argue on appeal that Dell acted with a mixed motive. Accordingly, we do not apply a mixed-motive analysis in this case. See Nasti v. Ciba Specialty Chems. Corp., 492 F.3d 589, 595 (5th Cir. 2007).